# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------------X

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| | Case No. 3:17-bk-03283 (LTS) |
| as representative of | |
| | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

-------------------------------------------------------------------------X

| | |
|---|---|
| In re: | |
| | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | |
| Debtor. | |

-------------------------------------------------------------------------X

| | |
|---|---|
| ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC, ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY, GLENDON OPPORTUNITIES FUND, L.P., MASON CAPITAL MASTER FUND LP, NOKOTA CAPITAL MASTER FUND, L.P., OAKTREE-FORREST MULTI-STRATEGY, LLC (SERIES B), | Adversary No. _____ |
| | **ADVERSARY COMPLAINT** |

---

[1]   The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number and last four (4) digits of each Debtor's federal tax identification number are (i) The Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No. 17-bk-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iv) Puerto Rico Highways and Transportation Authority (Bankr. Case No. 17-bk-3567 (LTS)) (Last Four Digits of Federal Tax ID:  3808).

OAKTREE OPPORTUNITIES FUND IX, L.P., OAKTREE    )
OPPORTUNITIES FUND IX (PARALLEL 2), L.P.,        )
OAKTREE VALUE OPPORTUNITIES FUND, L.P.,          )
OCHER ROSE, L.L.C., PUERTO RICO AAA              )
PORTFOLIO BOND FUND, INC., PUERTO RICO AAA       )
PORTFOLIO BOND FUND II, INC., PUERTO RICO        )
AAA PORTFOLIO TARGET MATURITY FUND, INC.,        )
PUERTO RICO FIXED INCOME FUND, INC., PUERTO      )
RICO FIXED INCOME FUND II, INC., PUERTO RICO     )
FIXED INCOME FUND III, INC., PUERTO RICO FIXED   )
INCOME FUND IV, INC., PUERTO RICO FIXED          )
INCOME FUND V, INC., PUERTO RICO GNMA & U.S.     )
GOVERNMENT TARGET MATURITY FUND, INC.,           )
PUERTO RICO INVESTORS BOND FUND I, PUERTO        )
RICO INVESTORS TAX-FREE FUND, INC., PUERTO       )
RICO INVESTORS TAX-FREE FUND, INC. II, PUERTO    )
RICO INVESTORS TAX-FREE FUND III, INC., PUERTO   )
RICO INVESTORS TAX-FREE FUND IV, INC., PUERTO    )
RICO INVESTORS TAX-FREE FUND V, INC., PUERTO     )
RICO INVESTORS TAX-FREE FUND VI, INC., PUERTO    )
RICO MORTGAGE-BACKED & U.S. GOVERNMENT           )
SECURITIES FUND, INC., SV CREDIT, L.P., TAX-FREE )
PUERTO RICO FUND, INC., TAX-FREE PUERTO RICO     )
FUND II, INC., AND TAX-FREE PUERTO RICO          )
TARGET MATURITY FUND, INC.,                      )
                                                 )
         Plaintiffs,                 )
                                                 )
        -against-                   )
                                                 )
THE COMMONWEALTH OF PUERTO RICO, THE             )
FINANCIAL OVERSIGHT AND MANAGEMENT               )
BOARD OF THE COMMONWEALTH OF PUERTO              )
RICO, THE PUERTO RICO FISCAL AGENCY AND          )
FINANCIAL ADVISORY AUTHORITY, THE                )
EMPLOYEES RETIREMENT SYSTEM OF THE               )
GOVERNMENT OF THE COMMONWEALTH OF                )
PUERTO RICO, GOVERNOR RICARDO ROSSELLÓ           )
NEVARES in his official capacity as the Governor of the    )
Commonwealth of Puerto Rico, RAÚL MALDONADO in   )
his official capacity as the Secretary of Treasury of the  )
Commonwealth of Puerto Rico,                     )
                                                 )
        Defendants.                 )
                                                 )
-----------------------------------------------------------------------X

## ADVERSARY COMPLAINT

TO THE HONORABLE COURT:

NOW COMES Plaintiffs Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund LP, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc., by and through their attorneys, and respectfully state, allege and pray as follows:

## PRELIMINARY STATEMENT

1.      This is an action for declaratory judgment, equitable relief, and damages brought pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105(a), and Rules 57 and 65 of the Federal Rules of Civil Procedure for the purpose of determining a substantial and actual controversy between the parties.

2.      Plaintiffs are owners of secured bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS") in 2008.  The proceeds of these bonds (the "ERS Bonds" or the "Bonds") were used to pay benefits to retirees and to reduce the ERS's unfunded accrued actuarial liabilities.  The ERS Bonds were granted collateral that included, among other things, all employer contributions from Puerto Rico government employers (including municipal employers, public corporations and the central government of Puerto Rico) and the ERS's legal right to receive those contributions.  The collateral pledged to support the ERS Bonds was sufficient to service the interest on the Bonds for the life of the bond issue and to repay the principal amount of the Bonds in full at maturity. Indeed, just months ago, in prior litigation, the ERS, the Commonwealth, and the Financial Oversight and Management Board of the Commonwealth of Puerto Rico ("Oversight Board" or the "Board") asserted that the Bonds are oversecured.

3.      In June 2017, the Puerto Rico legislature passed, and the Oversight Board adopted, Joint Resolution 188.  Joint Resolution 188 requires the ERS to liquidate its assets for distribution to the Commonwealth General Fund, and directs participating employers to make future employer contributions to the Commonwealth General Fund, rather than the ERS. Although the ostensible purpose of Joint Resolution 188 was to address the pension system's lack of liquidity, this could have been accomplished more directly by simply increasing employer contributions to the ERS within the existing statutory framework.  The purpose and effect of Joint Resolution 188 was to strip the ERS of its assets and to divert the ERS's employer contributions away from the reach of plaintiffs, all of which was pursued with the purpose of evading the ERS's obligations to plaintiffs.

4.      In this action, plaintiffs seek a determination that they remain secured creditors of the ERS and/or the Commonwealth notwithstanding Joint Resolution 188, or, in the alternative, a declaration that the diversion of plaintiffs' collateral violated several provisions of the United States and Puerto Rico Constitutions.  In particular, because the enactment of Joint Resolution 188 violated the ERS Title III automatic stay, it was void ab initio.  But even if Joint Resolution 188 was not void ab initio, the Puerto Rico Uniform Commercial Code provides that a lien follows collateral transferred without the consent of the secured creditor, and thus continues in any property received by the Commonwealth pursuant to Joint Resolution 188.  For these reasons, plaintiffs remain secured creditors of the ERS and/or the Commonwealth notwithstanding Joint Resolution 188.

5.      In the alternative, if Joint Resolution 188 was effective in stripping the ERS of its assets and diverting the ERS's employer contributions away from the reach of plaintiffs without compensation, such actions violated the Takings and Contracts Clauses of the United States and Puerto Rico Constitutions.  As a result of defendants' actions, plaintiffs are entitled to, among other things, a claim for just compensation that cannot be impaired in any Title III plan of adjustment or order confirming a Title III plan of adjustment.  And because plaintiffs were oversecured at all relevant times, this unimpairable claim equals the full principal amount of the ERS Bonds, together with all interest accrued to the date of payment.

## **THE PARTIES**

6.      Plaintiff Altair Global Credit Opportunities Fund (A), LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 1888 Century Park East, Los Angeles, CA 90067-1702.

7.     Plaintiff Andalusian Global Designated Activity Company is a designated activity company limited by its shares incorporated under the laws of Ireland located at 70 Sir John Rogerson's Quay, Dublin 2, Ireland.

8.     Plaintiff Glendon Opportunities Fund, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands located at Ugland House, South Church Street, Grand Cayman, Cayman Islands, KY1-1104.

9.     Plaintiff Mason Capital Master Fund, LP is a limited partnership organized and existing under the laws of the Cayman Islands located at PO Box 309, Ugland House, George Town KY1-1104.

10.     Plaintiff Nokota Capital Master Fund, L.P. is a limited partnership organized and existing under the laws of Cayman Islands with its principal place of business at 1330 Avenue of the Americas, 26th Floor, New York, NY 10019.

11.     Plaintiff Oaktree-Forrest Multi-Strategy, LLC (Series B) is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

12.     Plaintiff Oaktree Opportunities Fund IX, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

13.     Plaintiff Oaktree Opportunities Fund IX (Parallel 2), L.P. is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

14.    Plaintiff Oaktree Value Opportunities Fund, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

15.    Plaintiff Ocher Rose, L.L.C. is a Delaware limited liability company located at P.O. Box 1226, New York, NY 10150.

16.    Plaintiff Puerto Rico AAA Portfolio Bond Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

17.    Plaintiff Puerto Rico AAA Portfolio Bond Fund II, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

18.    Plaintiff Puerto Rico AAA Portfolio Target Maturity Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

19.    Plaintiff Puerto Rico Fixed Income Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

20.    Plaintiff Puerto Rico Fixed Income Fund II, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

21.     Plaintiff Puerto Rico Fixed Income Fund III, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

22.     Plaintiff Puerto Rico Fixed Income Fund IV, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

23.     Plaintiff Puerto Rico Fixed Income Fund V, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

24.     Plaintiff Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

25.     Plaintiff Puerto Rico Investors Bond Fund I is an investment trust organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

26.     Plaintiff Puerto Rico Investors Tax-Free Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

27.     Plaintiff Puerto Rico Investors Tax-Free Fund, Inc. II is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

28.     Plaintiff Puerto Rico Investors Tax-Free Fund III, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

29.     Plaintiff Puerto Rico Investors Tax-Free Fund IV, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

30.     Plaintiff Puerto Rico Investors Tax-Free Fund V, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

31.     Plaintiff Puerto Rico Investors Tax-Free Fund VI, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

32.     Plaintiff Puerto Rico Mortgage-Backed & U.S. Government Securities is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

33.     Plaintiff SV Credit, L.P. is a limited partnership organized and existing under the laws of Delaware located at 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

34.     Plaintiff Tax-Free Puerto Rico Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

35.    Plaintiff Tax-Free Puerto Rico Fund II, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

36.    Plaintiff Tax-Free Puerto Rico Target Maturity Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

37.    Defendant The Commonwealth of Puerto Rico is a United States territory subject to the laws of the United States and the plenary jurisdiction of Congress.

38.    Defendant Oversight Board is an entity created pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") to assist the Commonwealth, including instrumentalities, in managing its public finances, and for other purposes.

39.    Defendant The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") is an entity created pursuant to the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, P.R. Act No. 21-2016, for the purpose of acting as fiscal agent, financial advisor and reporting agent of the Commonwealth, its agencies, instrumentalities, subdivisions, public corporations and municipalities.

40.    Defendant the ERS is a trust created by the Legislature of the Commonwealth of Puerto Rico to provide pension and other benefits to employees of the government of the Commonwealth, members and employees of the Legislature, and employees of certain municipalities and public corporations in Puerto Rico.

41.     Defendant Ricardo Rosselló Nevares is the Governor of the Commonwealth of Puerto Rico and is being sued in his official capacity.

42.     Defendant Raúl Maldonado is the Secretary of Treasury of the Commonwealth of Puerto Rico and is being sued in his official capacity.

### JURISDICTION AND VENUE

43.     This action arises under the United States Constitution, the Puerto Rico Constitution, 42 U.S.C. § 1983, and 48 U.S.C. § 2126.  This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal statutes.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims arising under the Puerto Rico Constitution because they are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

44.     This Court also has jurisdiction over all claims and causes of action in this adversary proceeding pursuant to 48 U.S.C. § 2166(a)(2) because they are "related to" the above-captioned Title III cases.

45.     This action is an actual controversy within the jurisdiction of this Court under 28 U.S.C. § 2201.

46.     This Court has personal jurisdiction over all of the Defendants pursuant to 48 U.S.C. § 2166(c)

47.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the events giving rise to the claims herein occurred.  Venue is also proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in a Title III case.

48.     This Court may provide declaratory relief, injunctive relief, and damages pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105(a), and Federal Rules of Civil Procedure 57 and 65.

## FACTUAL ALLEGATIONS

### I.     THE ERS

#### A.     The ERS Enabling Act

49.     The ERS is a trust created by Act No. 447 of May 15, 1951 of the Legislature of the Commonwealth (the "ERS Enabling Act") to provide pension and other benefits to officers and employees of the Commonwealth, members and employees of the Legislature, and officers and employees of certain public corporations and municipalities of the Commonwealth. 3 L.P.R.A. § 761.   The ERS was established as an independent, self-governing entity separate from the Commonwealth and from the Commonwealth's agencies and instrumentalities. 3 L.P.R.A. § 775.   The ERS Enabling Act provided that the ERS is to be governed by an eleven-member Board of Trustees, which is responsible for setting policy for, and overseeing the operations of, the ERS.   *Id.*

50.     The ERS Enabling Act gave the Board of Trustees blanket authorization to incur debt on behalf of the ERS and to secure such debt with the ERS's assets.   Specifically, it authorized the Board of Trustees to "seek a loan from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America or through the direct placement of debts, securing said debt with the assets of the [ERS]."  3 L.P.R.A. § 779(d).

#### B.     Employer Contributions

51.     The ERS is funded by employer contributions, employee contributions, and investment earnings on its undistributed funds.   Employer contributions are the largest

component of this income stream, and they constitute a legal asset of the ERS.  The ERS has a statutory right to receive these employer contributions, and employers are required by statute to make them.

52.    The ERS receives employer contributions both from the Commonwealth and from various municipalities within, and public corporations of, the Commonwealth.    The Commonwealth is responsible for approximately 59 percent of the employer contributions the ERS receives, while municipalities and public corporations account for the rest.

53.    By statute, employer contributions must be sufficient to maintain the actuarial integrity of the ERS—*i.e.*, they must cover the difference between the total cost of benefits provided by the ERS and administrative costs, reduced by contributions made by employees themselves.  One type of employer contribution is based on a percentage of payroll.  During the 2016-17 fiscal year, each employer was obligated to contribute a minimum of 15.525 percent of the compensation regularly received by eligible employees on a monthly basis.  3 L.P.R.A. § 787f.  These amounts increased annually.  *Id.*

54.    The critical importance of employer contributions to the ERS, and the ERS's authority to enforce its rights, are reflected in a series of provisions in the ERS Enabling Act. For example, an employer's failure to pay timely its contributions to the ERS may be punishable as a misdemeanor.  3 L.P.R.A. § 781a(e), (f).  If an employer's contributions to the ERS are in arrears for more than 30 days, the ERS's claim to those contributions has priority over any other outstanding debt of that employer.  *Id.* § 781a(h).  If a municipality does not make its employer contributions to the ERS, the ERS has the power to intercept or garnish the municipality's property tax revenues.  *Id.* § 781a(g).  If agencies, public corporations, and instrumentalities of the Commonwealth fail to make employer contributions, the ERS is authorized to issue a

certificate of debt for immediate payment of the arrearages from the Department of Treasury. *Id.*
§ 781a(h). The ERS also is entitled to receive interest on these delinquent contributions. *Id.*

## II. THE COMMONWEALTH'S FAILURE TO FUND THE ERS

55. The underfunding facing the ERS is nothing new. To the contrary, it is the result
of the Commonwealth's decades of underfunding, its enactment of politically opportunistic
benefit increases without allocating the funds to pay for them, and its repeated failure to address
the growing pension problems despite many warnings. The Commonwealth's failure to make
even the payments required by law has forced the ERS to exhaust its assets, including the
proceeds of the 2008 bond issuance, in order to make pension payments to retirees.

56. The ERS's funding problems result in part from the original design of the ERS.
As originally designed, the pension benefit payments owed by the ERS were fixed by the ERS
Enabling Act and did not depend on the amount of contributions made by employers/employees
or actuarial/economic changes that affected the ERS's funding level. Although the law
contemplated that additional contributions might be necessary to maintain a proper funding level,
for decades the Commonwealth has not made the employer contributions required by law.

57. The Commonwealth compounded these problems when it passed a series of
"special laws" between 1960 and 2013 that increased pension benefits without providing for
mandatory increased contributions to pay for them. These "special laws" included a summer
bonus, a medication bonus, a Christmas bonus, contributions to health insurance plans, certain
other minimum pension benefits, certain other minimum death benefits, cost of living
allowances, and certain additional death and disabilities benefits. The cost of the benefits
granted by these special laws was at least $212 million per year in 2013.[2]

---

[2] *See* Act of Apr. 4, 2013, No. 3-2013 (Statement of Motives).

58.     Facing a significant underfunding and lacking the necessary support from the Commonwealth, the ERS in 2008 sought to address its financial problems by issuing pension funding bonds (discussed more fully below).  This financing led to an infusion of $3 billion in much-needed cash into the ERS, in exchange for the ERS's promise to make principal and interest payments to the bondholders.  These obligations, in turn, were secured by liens on, among other things, the employer contributions the ERS was entitled to receive.

59.     Even this amount proved insufficient to solve the ERS's funding problems.  By 2011, the ERS's actuaries were issuing warnings to the Commonwealth about the ERS's lack of funds.   Rather than taking responsible steps to address the ERS's dire situation, the Commonwealth enacted politically expedient, superficial remedies.  For example, through Act No. 116-2011, the Commonwealth enacted a staggered increase of employer contributions from 10.275% in 2011 to 21% by 2021.  But according to the ERS's actuaries, this staggered increase in employer contributions was not sufficient to meet the ERS's cash flow needs, let alone reduce the ERS's actuarial deficit.[3]  Then, in 2013, the Commonwealth enacted Act No. 3-2013, which, among other things, sought to freeze certain pension benefits and to require the Commonwealth to make additional contributions to reduce the ERS's actuarial deficit.  Once again, however, the Commonwealth failed to make the payments required of it by law.  As a result of this chronic underfunding, the ERS has never built a surplus of assets and instead has continued to use employer contributions to pay current benefits.

## III.   PENSION FUNDING BONDS ISSUED BY THE ERS

### A.     The ERS Bond Resolution

60.     The ERS issued bonds pursuant to the authority of a resolution (the "ERS Bond Resolution") of its Board.  *See* Pension Funding Bond Resolution (Jan. 24, 2008) (attached as

---

[3] *See id.*

Exhibit A).  It is the ERS Bond Resolution that governs the contractual relationship between the ERS and plaintiffs with respect to the ERS Bonds, specifies the times and amounts of payment of interest and repayment of principal, and sets forth the collateral the ERS provided as security for payment.

61.     The ERS Bond Resolution constitutes a valid, binding contract between the ERS and holders of ERS Bonds.  ERS Bond Resolution § 102.  It affirms that the ERS Bonds are valid, legally binding obligations of the ERS, *id.* §§ 201, 705.

B.     Issuance of the ERS Bonds

62.     The ERS issued bonds on the following dates:

a.   "Series A" Bonds totaling $1,588,810,799.60 on January 31, 2008.

b.   "Series B" Bonds totaling $1,058,634,613.05 on June 2, 2008.

c.   "Series C" Bonds totaling $300,202,930 on June 30, 2008.

63.     Most of the ERS Bonds were sold to individual residents of the Commonwealth and to local businesses.

64.     All of the bond issues' net proceeds (after costs of issuance and required reserves) were used to pay benefits to retirees or invested to provide for future benefit payments.

65.     As of February 2017, the aggregate principal amount of the interest-bearing ERS Bonds plus the accreted[4] value of the zero coupon or capital appreciation ERS Bonds totaled approximately $3,156,000,000.[5]

---

[4] The accreted value of the capital appreciation ERS Bonds refers to the accrued portion of the face amount.

[5] Government of Puerto Rico: Puerto Rico Fiscal Agency and Financial Advisory Authority, Fiscal Plan for Puerto Rico, at 26 (March 13, 2017), https://junta.pr.gov/wp-content/uploads/wpfd/50/58c71815e9d43.pdf.

66.    Plaintiffs together are beneficial holders of approximately $2 billion of these Bonds.

C.    The "Pledged Property"

67.    The foundation of the ERS bond transaction was an extensive security package necessary to protect the investment made by holders of ERS Bonds.  Without this security package, it would have been impossible for the ERS to sell the Bonds in the first place.

68.    The collateral underlying the security package was called "Pledged Property." The ERS Bond Resolution defined Pledged Property to include:

> a.  all "Revenues," including, among other things, all employer contributions received by the ERS or the Fiscal Agent "and any assets in lieu thereof or derived thereunder which are payable to [the ERS] pursuant to [the ERS Enabling Act]";
>
> b.  all "right, title, and interest of [the ERS] in and to" the "Revenues" and "all rights to receive the same";
>
> c.  the funds, accounts, and subaccounts held for the benefit of bondholders;
>
> d.  any and all other rights and personal property of every kind pledged and assigned by the ERS for additional security; and
>
> e.   "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property.

ERS Bond Resolution § 501 & Exh. B, VI-33, VI-36, VI-37.

69.     The security interests in and liens on the Pledged Property are "valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the [ERS], irrespective of whether such parties have notice thereof."  *Id.* § 501.

70.     The Pledged Property was required to be and, as of the commencement of the PROMESA Title III case for the ERS on May 21, 2017 was, free and clear of any other pledge, lien, charge, or encumbrance.  *Id.* § 705.

71.     The ERS was required to use the Pledged Property to make timely principal and interest payments on the ERS Bonds before it spent or used any of the funds for any other purpose.  *Id.* §§ 501, 701, & Exh. B, VI-36.

72.     To assure that the Pledged Property would remain available to secure the Bonds, the Bond Resolution explicitly required the ERS to pursue all available legal remedies to collect employer contributions that were delinquent or inadequate.  *Id.* §§ 701, 709.

73.     The Oversight Board, the ERS, and the Commonwealth have previously asserted that the ERS Bonds are oversecured.[6]

---

[6] *See, e.g.*, Brief of Amicus Curiae Fin. Oversight and Mgmt. Bd. for Puerto Rico in Support of Respondents-Appellees Urging Affirmance of the District Court Order in *Altair Global Credit Opportunities Fund (A), L.L.C. , et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-2433, ECF No. 65, at 18 (1st Cir. Dec. 23, 2016) ("The [ERS Bondholders] have a substantial equity cushion as a result of the reserve accounts and the perpetual revenue streams."); Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C. , et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 52, at 10-11 (Oct. 26, 2016) ("[T]he security interests held by the ERS Bondholders provide them with future protection more than sufficient to address any concern, real or imagined."); Respondents' Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro García Padilla, et al.*, No. 16-cv-2696, ECF No. 53, at 18 ("Given its size and indefinite duration, the security interest provides Movants with the adequate protection they purport is required to ensure payment on their bonds, certainly through the expiration of the PROMESA stay and, indeed, for as long as the bonds remain outstanding.").

D.    Transfer of Contributions to Fiscal Agent

74.    The ERS Bond Resolution established the mechanism by which the employer contributions were to be accounted for, deposited, and distributed.  The ERS Bond Resolution provided that a "Fiscal Agent" would be responsible for administering these matters.  At all relevant times, the Bank of New York Mellon has served as the Fiscal Agent.

75.    The ERS Bond Resolution requires the ERS to transfer employer contributions to the Fiscal Agent on the last business day of each month.  *Id.* § 504.  By the next business day, the Fiscal Agent must deposit the employer contributions into the "Revenue Account," except in limited circumstances not relevant here.  *Id.*  Monies in the Revenue Account are to be applied, in order of priority, (a) to an account to make debt service on senior bonds, (b) to a reserve account for senior bonds, (c) to an account to make debt service on subordinated bonds, (d) to a reserve account for subordinated bonds, (e) to pay operating expenses, and (f) to a general reserve account.  *Id.*  The Fiscal Agent is then responsible for making timely interest and principal payments to ERS Bondholders from these accounts.  *Id.* § 505(4), (5).

IV.    **THE PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT ("PROMESA")**

76.    On June 30, 2016, Congress passed PROMESA.  The stated purpose of PROMESA was to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes."  H.R. 5278, 114th Cong. (2016) (preamble).

77.    The enactment of PROMESA automatically triggered an initial stay of creditor remedies against the Commonwealth and its instrumentalities, modeled on the Bankruptcy Code's automatic stay.  48 U.S.C. § 2194.  The stay began on June 30, 2016, and initially lasted

until February 15, 2017, but the Oversight Board extended the stay until May 1, 2017, at the Commonwealth's request. *Id.* § 2194(d),

78.     On August 3, 2016, plaintiffs requested that the ERS provide adequate protection of their security interests in and liens on the Pledged Property while the initial automatic stay was in effect.  By letter dated August 16, 2016, the ERS denied that request.  In response, plaintiffs filed a motion before this Court to lift the initial PROMESA stay on the ground that plaintiffs' liens were not adequately protected.  The ERS and the Commonwealth opposed the motion, arguing, among other things, that plaintiffs were adequately protected because of their "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which [would] continue to grow."[7]  This Court agreed that plaintiffs were entitled to adequate protection but concluded that plaintiffs were adequately protected by the stream of employer contributions to the ERS.  On appeal, the United States Court of Appeals for the First Circuit ruled that plaintiffs were entitled to a hearing on whether their interests were adequately protected during the initial PROMESA stay, expressing doubts about the constitutionality of any action by the Commonwealth or the ERS that would eliminate the employer contributions or take the ERS's assets without compensating plaintiffs.

## V.     TITLE III CASES

79.     Title III of PROMESA authorized the Oversight Board to file a petition to restructure the debts of a government instrumentality in a court-supervised adjustment process similar to Chapter 9 of the Bankruptcy Code.

---

[7] Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C. , et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 52, at 10 (Oct. 26, 2016); *see also* Respondents' Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C. , et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 53, at 5 (Oct. 26, 2016) (Commonwealth's brief making similar statements).

80.     On May 3, 2017, the Oversight Board approved and certified the filing of a PROMESA Title III petition for the Commonwealth.[8]

81.     On May 21, 2017, the Oversight Board approved and certified the filing of a separate PROMESA Title III petition for the ERS.[9]

82.     PROMESA incorporates the automatic stay provisions of § 362 of the Bankruptcy Code.  Pursuant to these provisions, the filing of the ERS Title III case on May 21, 2017, operated as a stay against all efforts by any person (including the Commonwealth) to obtain or exercise control over property of the ERS.  That automatic stay has remained in effect during all times relevant to this action.

## VI.    JOINT RESOLUTION FOR OTHER ALLOCATIONS FOR FISCAL YEAR 2017-2018 ("JOINT RESOLUTION 188")

83.     The Puerto Rico legislature passed Joint Resolution 188[10] on June 25, 2017, and the Oversight Board adopted it on behalf of the Governor on June 30, 2017.[11]

---

[8] Financial Oversight and Management Board, Oversight Board Certifies Title III Filings (May 3, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/49/590a09096cd13.pdf.

[9] Financial Oversight and Management Board for Puerto Rico, Oversight Board Certifies Title III Filings (May 22, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/49/5923379dd9dfc.pdf.

[10] An unofficial English translation of Joint Resolution 188 is attached as Exhibit B. The official Spanish version is available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59591daabd5eb.pdf.

[11] The Oversight Board adopted House Resolution 186, House Resolution 187, and House Resolution 188 as part of the Commonwealth's budget pursuant to §§ 202(d)(2) and 202(e)(3) of PROMESA.  The Board "deemed" the budget, along with the various resolutions, "to be approved by the Governor and the Legislature" and "in full force and effect beginning on July 1, 2017."  Exhibit A to Letter from Financial Oversight and Management Board to Governor Rosselló, at 2 (June 30, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59591daabd5eb.pdf.  House Resolution 186 and House Resolution 187 address other matters related to the Commonwealth's budget, but they also include the full text of House Resolution 188.  To avoid repetition, the Complaint refers to House Resolution 188 only.

84.     The ostensible purpose of Joint Resolution 188 was to address the pension system's lack of liquidity and insolvency and the need for increased funding to pay benefits owed by the ERS to retirees.  This could have been accomplished, however, simply by increasing employer contributions to the ERS within the existing statutory scheme.  Nevertheless, the Oversight Board required the Commonwealth to draft Joint Resolution 188 to bypass the ERS entirely and instead require employers to make increased employer contributions directly to the Commonwealth General Fund.  The actual purpose and purported effect of Joint Resolution 188, then, was to confiscate plaintiffs' constitutionally-protected property interests in Pledged Property.

85.     In addition, Joint Resolution 188 ordered the ERS to sell its assets and to transfer the net cash proceeds, in addition to any available funds, into the Puerto Rico Treasury Secretary's account as part of the General Fund for fiscal year 2017-2018 to make benefit payments to pensioners.  Joint Resolution 188 §§ 1, 2, 3.

86.     Joint Resolution 188 also provides in relevant part that:

a.  the Commonwealth would assume any payments that Puerto Rico's retirement systems, including the ERS, could not make;

b.  the ERS would continue to meet its obligations to beneficiaries and pensioners by contributing its available funds and any funds arising from its asset sales to the Commonwealth's General Fund;

c.  the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to the ERS;

    d.  AAFAF would establish procedures so that the Commonwealth, its public corporations, and its municipalities would make employer contributions to the Commonwealth.

*Id.* § 4.

87.    No consideration was provided to the ERS or the ERS Bondholders in exchange for the collateral transferred to the Commonwealth's General Fund.

88.    Joint Resolution 188 was approved by the Puerto Rico legislature pursuant to the fiscal plan approved and certified by the Oversight Board.  *Id.* § 4.

89.    No emergency justified the stripping of the ERS's assets.  The ERS's inability to pay beneficiaries was both foreseeable and avoidable.  It was caused by the Commonwealth's chronic underfunding of the ERS and its failure to establish and pay sufficient employer contributions to ensure the ERS's ability to make payments to pension beneficiaries over a period of many years.

90.    Moreover, there is no evidence that the ERS lacks sufficient resources to comply with its debt service obligations as originally scheduled.  Employer contributions include not only those of the central government, but those of public corporations and municipalities.  Public corporations and municipalities are responsible for approximately 41 percent of employer contributions, and those contributions alone are sufficient to fully service the ERS Bonds.

91.    Even if the Commonwealth's past failures to address the ERS's funding level require it to now make changes, less drastic and lawful measures are available.  There is no reason why the Commonwealth could not have raised employer contributions through the existing statutory structure and continued to direct employer contributions to the ERS for payment to beneficiaries.  Rather, the only reason the Commonwealth and the Oversight Board

enacted Joint Resolution 188 was to evade the ERS's obligation to make payments on the ERS Bonds and to deprive plaintiffs of their constitutionally protected property interests.

92.     Moreover, stripping the ERS of its assets certainly will not help *the ERS* to meet *its* obligations.  Rather, the Commonwealth and the Oversight Board enacted Joint Resolution 188 for the purpose of providing *the Commonwealth* with additional funds to meet *its* proposed plan to distribute $900 million to its own creditors in a plan of adjustment.  Thus, not only did the Commonwealth enact Joint Resolution 188 to deprive plaintiffs of their constitutionally protected property, it did so to advantage itself at the expense of the ERS.

93.     Nor does Joint Resolution 188 spread the burden of restoring the Commonwealth's fiscal health across various sectors of society.  Rather, it deprives the ERS of the ability to pay its creditors, including plaintiffs, and instead allows the Commonwealth to use ERS assets to make debt service payments to Commonwealth creditors.  The Commonwealth's fiscal plan, moreover, contemplates that pension beneficiaries will receive 90% of the amount they are owed while ERS Bondholders will receive pennies on the dollar.  This, in effect, reverses the priorities established by the statutory and contractual provisions governing the ERS and the ERS Bonds.

## FIRST CLAIM FOR RELIEF

### *Request for a Declaration that Joint Resolution 188 Violated the ERS Automatic Stay, Was Void Ab Initio, and Cannot Be Implemented*

94.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 93 above.

95.     The ERS is an independent, self-governing entity separate from the Commonwealth and from the Commonwealth's agencies and instrumentalities.  3 L.P.R.A. § 775.

96.     Pursuant to 11 U.S.C. § 362(a), made applicable to the ERS Title III case by 48 U.S.C. § 2161(a), the commencement of the ERS Title III case operated as an automatic stay of any actions by third parties "to obtain possession of property of the [ERS] or of property from the [ERS] or to exercise control over property of the [ERS]." 11 U.S.C. § 362(a)(3).

97.     Actions taken in violation of the automatic stay are void ab initio.

98.     Joint Resolution 188 purports to (i) require the ERS to liquidate its assets and transfer the proceeds to the Commonwealth; and (ii) divert employer contributions to which the ERS has a statutory right away from the ERS to the Commonwealth.

99.     The enactment of Joint Resolution 188 was an action by the Commonwealth to obtain possession of property of the ERS and from the ERS, and to exercise control over property of the ERS.

100.    Joint Resolution 188 was enacted by the Commonwealth after the commencement of the ERS Title III case.

101.    The Commonwealth is a third party to the ERS that owes payment obligations to the ERS.

102.    The Commonwealth violated the ERS automatic stay when it passed Joint Resolution 188.

103.    Joint Resolution 188 is therefore void ab initio and cannot be implemented.

## SECOND CLAIM FOR RELIEF

### *Request for a Determination of Secured Status in the ERS Title III Case Pursuant to 11 U.S.C. § 506(a)*

104.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 103 above.

105.    Section 506(a)(1) of the Bankruptcy Code, 11 U.S.C. § 506(a), made applicable to the ERS Title III Case by § 301 of PROMESA, 48 U.S.C. § 2161, provides that "[a]n allowed claim of a creditor secured by a lien on property in which the [debtor] has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

106.    Pursuant to the ERS Bond Resolution, plaintiffs possess valid, perfected security interests in and liens on the Pledged Property.

107.    Because Joint Resolution 188 violated the automatic stay, it is void ab initio.

108.    The ERS therefore retains full ownership rights in the Pledged Property, including any Pledged Property in possession of the Commonwealth pursuant to Joint Resolution 188.

109.    The value of the property subject to plaintiffs' valid, perfected liens is greater than the value of plaintiffs' claims against the ERS.

110.    Therefore, pursuant to 11 U.S.C. § 506(a)(1), plaintiffs are secured creditors to the full extent of their claims against the ERS.

## THIRD CLAIM FOR RELIEF

### *Request for a Determination of Secured Status in the Commonwealth Title III Case Pursuant to 11 U.S.C. § 506(a)*

111.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 110 above.

112.    Section 506(a)(1) of the Bankruptcy Code, 11 U.S.C. § 506(a), made applicable to the ERS Title III Case by § 301 of PROMESA, 48 U.S.C. § 2161, provides that "[a]n allowed claim of a creditor secured by a lien on property in which the [debtor] has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

113.    Pursuant to the ERS Bond Resolution, the ERS granted plaintiffs valid, perfected security interests in and liens on the Pledged Property.

114.    The ERS bondholders' liens extend to the "proceeds" of Pledged Property, including the proceeds of employer contributions previously received by the ERS as well as the proceeds of the ERS's right to receive future employer contributions.

115.    The Puerto Rico Uniform Commercial Code (both in 2008 and today) provides that "[a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien," and also that "a security interest attaches to any identifiable proceeds of collateral."   19 L.P.R.A. § 2265(a); *see also* 19 L.P.R.A. § 2106(2) (2008) ("[A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.").   Nothing contained in PROMESA alters, amends, or preempts these laws.

116.    Joint Resolution 188 orders the ERS to "sell [its] assets and to transfer the net cash proceeds, in addition to any available fund[s], into the Treasury Secretary's account."   Joint Resolution 188 § 2.   The "assets" and "fund[s]" of the ERS, and any cash proceeds resulting from their sale, are the proceeds of past employer contributions or other Pledged Property and are subject to plaintiffs' liens on the Pledged Property.   The sale of the ERS's assets and transfer of its funds is a "disposition" of plaintiffs' collateral.

117.    Joint Resolution 188 also orders non-Commonwealth public employers (such as municipalities and public corporations) to cease paying employer contributions to the ERS and

instead to make these payments to the Commonwealth's General Fund.  The ERS's "right to receive" employer contributions from these non-Commonwealth public employers is subject to plaintiffs' liens on the Pledged Property, and Joint Resolution 188 has effectively transferred this "right to receive" employer contributions from the ERS to the Commonwealth.  This transfer of the ERS's "right to receive" employer contributions thus amounts to a "disposition" of plaintiffs' collateral.

118.    Plaintiffs have not consented to these or any other dispositions of their collateral.

119.    Defendants failed to act in good faith in causing the ERS to dispose of plaintiffs' collateral to the Commonwealth for no consideration.

120.    Therefore, pursuant to 19 L.P.R.A. § 2106(2) (2008) and 19 L.P.R.A. § 2265(a) (2017), if Joint Resolution 188 was not void ab initio, all assets or cash proceeds of the ERS transferred to the Commonwealth and any future employer contributions made to the Commonwealth's General Fund remain subject to plaintiffs' liens on the Pledged Property.

121.    To the extent that the Commonwealth acquires property subject to plaintiffs' liens, such acquisition gives rise to a secured claim in favor of the ERS bondholders against the Commonwealth in its Title III case.

122.    The value of the property subject to plaintiffs' valid, perfected liens is greater than the value of plaintiffs' claims against the Commonwealth.

123.    Therefore, pursuant to 11 U.S.C. § 506(a)(1), plaintiffs are secured creditors to the full extent of their claims against the Commonwealth.

## FOURTH CLAIM FOR RELIEF

***Request for a Declaratory Judgment That Any Transfer of Pledged Property Pursuant to Joint Resolution 188 Will Result in an Unjust Enrichment of the Commonwealth***

124.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 123 above.

125.     To the extent that Joint Resolution 188 transfers Pledged Property from the ERS to the Commonwealth, it does so for the sole purpose of evading the ERS bondholders' liens on the Pledged Property and the ERS's obligation to repay plaintiffs.

126.     Defendants failed to act in good faith in purporting to transfer plaintiffs' collateral to the Commonwealth for no consideration through Joint Resolution 188.

127.     Because Joint Resolution 188 is void ab initio, disposes of plaintiffs' property without their consent, and is unconstitutional, to the extent that the Commonwealth obtains Pledged Property pursuant to Joint Resolution 188, the Commonwealth will be intentionally and wrongfully holding property of plaintiffs without their consent, in violation of United States and Puerto Rico law.

128.     Plaintiffs are entitled to a declaration that any transfer of Pledged Property pursuant to Joint Resolution 188 will result in an unjust enrichment of the Commonwealth at plaintiffs' expense.

## FIFTH CLAIM FOR RELIEF

***Request for a Declaratory Judgment That the Transfer of Plaintiffs' Collateral Was Not for a "Public Use" Within the Meaning of the United States and Puerto Rico Constitutions***

129.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in paragraphs 1 through 128 above.

130.     The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V

(the "U.S. Takings Clause").  The Takings Clause applies to the States, and the Commonwealth, by virtue of Section 1 of the Fourteenth Amendment.  *See* U.S. Const. amend. XIV, § 1.

131.    Article II, Section 9 of the Puerto Rico Constitution provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."  P.R. Const. art. II, § 9 (the "P.R. Takings Clause").

132.    Plaintiffs possess a constitutionally protected property interest in the form of valid, perfected security interests in and liens on the Pledged Property.

133.    Joint Resolution 188 orders the ERS to "sell [its] assets and to transfer the net cash proceeds, in addition to any available fund[s], into the Treasury Secretary's account."  Joint Resolution 188 § 2.  The "assets" and "fund[s]" of the ERS, and any cash proceeds resulting from their sale, are the proceeds of past employer contributions and are subject to plaintiffs' liens on the Pledged Property.  Joint Resolution 188 therefore requires the ERS to transfer plaintiffs' collateral to the Commonwealth.

134.    Joint Resolution 188 also orders non-Commonwealth public employers (such as municipalities and public corporations) to cease paying employer contributions to the ERS and instead to make these payments to the Commonwealth's General Fund.  Joint Resolution 188 therefore effectively transfers plaintiffs' collateral – *i.e.*, the "right to receive" employer contributions – from the ERS to the Commonwealth.

135.    Joint Resolution 188 provides no compensation of any kind for the transfers of plaintiffs' property to the Commonwealth.

136.    To the extent that Joint Resolution 188 is not void ab initio and plaintiffs' liens do not continue in the Pledged Property when transferred to the Commonwealth, the transfer of the

ERS's assets and the ERS's "right to receive" employer contributions amounts to a "taking" of plaintiffs' collateral.

137.     Joint Resolution 188, however, was not enacted for a "public purpose" within the meaning of the U.S. and P.R. Takings Clauses.  Rather, Joint Resolution 188 was enacted in order to divert assets to the General Fund so that the Commonwealth can meet the $900 million of debt service payments to other creditors contemplated in its fiscal plan and in order to pay junior pension benefit creditors of the ERS rather than plaintiffs.

138.     Under the U.S. and P.R. Takings Clauses, defendants may not take property from private parties unless the taking is for a "public use."  Taking property from senior creditors in order to give it to junior creditors is not a "public use" within the meaning of the U.S. and P.R. Takings Clauses.

139.     To the extent that Joint Resolution 188 is not void ab initio and plaintiffs' liens do not continue in any collateral transferred from the ERS to the Commonwealth, Joint Resolution 188 violates the U.S. and P.R. Takings Clauses and cannot be implemented.

## SIXTH CLAIM FOR RELIEF

***Request for a Declaratory Judgment that Joint Resolution 188, On Its Face, Constitutes an Unconstitutional Taking of Private Property Without Just Compensation in Violation of the U.S. and P.R. Takings Clauses***

140.     Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 139 above.

141.     The U.S. Takings Clause provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  The U.S. Takings Clause applies to the States, and the Commonwealth, by virtue of Section 1 of the Fourteenth Amendment.  *See* U.S. Const. amend. XIV, § 1.

142.   The P.R. Takings Clause provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law." P.R. Const. art. II, § 9.

143.   Plaintiffs possess a constitutionally protected property interest in the form of valid, perfected security interests in and liens on the Pledged Property.

144.   Joint Resolution 188 orders the ERS to "sell [its] assets and to transfer the net cash proceeds, in addition to any available fund[s], into the Treasury Secretary's account." Joint Resolution 188 § 2.  The "assets" and "fund[s]" of the ERS, and any cash proceeds resulting from their sale, are the proceeds of past employer contributions and are subject to plaintiffs' liens on the Pledged Property.  Joint Resolution 188 therefore requires the ERS to transfer plaintiffs' collateral to the Commonwealth.

145.   Joint Resolution 188 also orders non-Commonwealth public employers (such as municipalities and public corporations) to cease paying employer contributions to the ERS and instead to make these payments to the Commonwealth's General Fund.  Joint Resolution 188 therefore effectively transfers plaintiffs' collateral – *i.e.*, the "right to receive" employer contributions – from the ERS to the Commonwealth.

146.   Joint Resolution 188 provides no compensation of any kind for the transfers of plaintiffs' property to the Commonwealth.

147.   Plaintiffs are therefore entitled to a declaration that, to the extent (i) Joint Resolution 188 is not void ab initio, (ii) plaintiffs' liens do not continue in any Pledged Property transferred to the Commonwealth pursuant to Joint Resolution 188, and (iii) taking the Pledged Property to pay junior creditors qualifies as a "public use" within the meaning of the U.S. and P.R. Takings Clauses, Joint Resolution 188, on its face, constitutes an unconstitutional taking of

their Pledged Property without just compensation in violation of the U.S. and P.R. Takings

Clauses.

## SEVENTH CLAIM FOR RELIEF

***Request for a Declaration that Any Award of Just Compensation or Damages for Violation of the Takings Clauses Cannot Be Impaired by a PROMESA Plan or an Order Confirming a PROMESA Plan***

148.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 147 above.

149.    Joint Resolution 188 violates the U.S. and P.R. Takings Clauses by taking plaintiffs' property without providing just compensation.

150.    If Joint Resolution 188 is implemented, Plaintiffs will be entitled to an award of damages and/or just compensation for these constitutional violations.

151.    Because plaintiffs were oversecured at all times relevant to this action, the amount of just compensation required for the taking of plaintiffs' collateral pursuant to Joint Resolution 188 is no less than the principal amount of the ERS Bonds and any and all interest accruing thereon until the date compensation is paid.

152.    Impairing plaintiffs' constitutional claims in a Title III plan would violate the Fifth and Fourteenth Amendments to the United States Constitution and Article II of the Puerto Rico Constitution.

153.    Plaintiffs are therefore entitled to a declaration that any award of just compensation or damages for violation of the U.S. and P.R. Takings Clauses cannot be impaired by a PROMESA plan of adjustment or an order confirming a PROMESA plan of adjustment.

## EIGHTH CLAIM FOR RELIEF

### *Request for a Declaratory Judgment That Joint Resolution 188 Violates the Contracts Clauses of the United States and Puerto Rico Constitutions*

154.    Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 153 above.

155.    Article I, § 10 of the U.S. Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1 (the "U.S. Contracts Clause").

156.    Article II, § 7 of the Puerto Rico Constitution provides that "[n]o laws impairing the obligation of contracts shall be enacted."  P.R. Const. art. II, § 7 (the "P.R. Contracts Clause").

157.    The ERS Bond Resolution created a contractual relationship between the ERS and plaintiffs.  Plaintiffs relied on the ERS's promises in the ERS Bond Resolution when they acquired ERS Bonds.

158.    Under Section 701 of the ERS Bond Resolution, plaintiffs have a contractual right to timely payment of principal and interest by the ERS.  Bond Resolution § 701 ("The [ERS] shall duly and punctually pay or cause to be paid the principal of and premium, if any, on every Bond and the interest thereon . . . .").  Moreover, under Section 501 of the ERS Bond Resolution, plaintiffs have a contractual right and security interest in the Pledged Property.

159.    Joint Resolution 188 requires the ERS to liquidate its assets and pay the proceeds to the Commonwealth's General Fund, and diverts the stream of employer contributions from the ERS to the Commonwealth.  Joint Resolution 188 thereby substantially impairs contractual obligations of the ERS by depriving the ERS of the funds necessary to pay the principal and

interest due to plaintiffs and by depriving plaintiffs of their rights and security interest in the Pledged Property.

160.    The impairment of the ERS's contractual obligations is substantial.  The ERS's obligation to make timely principal and interest payments was its central undertaking in the ERS Bond Resolution, and the security interest in the Pledged Property the ERS granted the ERS Bondholders was the foundation of the transaction.  These promises substantially induced ERS bondholders to purchase ERS Bonds, and without them, bondholders would not have invested in ERS Bonds.

161.    Joint Resolution 188's substantial impairment of contractual obligations is neither reasonable nor necessary to an important purpose of the Commonwealth government.  The ERS's underfunding problem was both foreseeable and avoidable, and was caused by the Commonwealth's chronic underfunding of the ERS.  There is also no evidence that the ERS lacks sufficient resources to comply with its debt service obligations as originally scheduled. And there is no reason that the increase in employer contributions enacted by Joint Resolution 188 could not have been accomplished within the existing statutory scheme, without eliminating the ERS.

162.    Nor does Joint Resolution 188 spread the burden of restoring the Commonwealth's fiscal health across various sectors of society.  Rather, it deprives plaintiffs of their property and ability to get repaid while enabling payments to the Commonwealth's creditors and to pension beneficiaries.

163.    Neither PROMESA nor any other federal law authorizes or allows the Commonwealth or the Court to impair contracts in the manner implemented by Joint Resolution 188.

164.    The Commonwealth's substantial impairment of the ERS's contractual obligations therefore constitutes a violation of the U.S. and P.R. Contracts Clauses and cannot be implemented.

165.    To the extent that Joint Resolution 188 is implemented, plaintiffs will suffer damages in an amount equal to the principal owed to each of plaintiffs, plus the interest accrued until the time of payment.

## PRAYER FOR RELIEF

166.    **WHEREFORE**, based on the above and foregoing, plaintiffs pray that this Honorable Court enter an order:

a.   Enforcing the automatic stay and declaring that Joint Resolution 188 was void ab initio.

b.   Determining that plaintiffs hold a secured claim to the full extent of their allowed claim against the ERS.

c.   Determining that plaintiffs hold a secured claim to the full extent of their allowed claim against the Commonwealth.

d.   Declaring that plaintiffs' lien continues in any Pledged Property transferred to the Commonwealth from the ERS.

e.   Declaring that any transfer of Pledged Property to the Commonwealth without plaintiffs' consent pursuant to Joint Resolution 188 will result in an unjust enrichment of the Commonwealth at plaintiffs' expense.

f.   Declaring that transfer of the Pledged Property from the ERS to the Commonwealth pursuant to Joint Resolution 188 was not for a "public use" within the meaning of the U.S. and P.R. Takings Clauses.

g.  Declaring that transfer of the Pledged Property from the ERS to the Commonwealth pursuant to Joint Resolution 188, on its face, constitutes an unconstitutional taking of private property without just compensation within the meaning of the U.S. and P.R. Takings Clauses.

h.  Declaring that any award of just compensation or damages for violation of the U.S. and P.R. Takings Clauses cannot be impaired by a PROMESA plan of adjustment or an order confirming a PROMESA plan of adjustment.

i.  Declaring that Joint Resolution 188 substantially interferes with plaintiffs' contract rights with the ERS in violation of the U.S. and P.R. Contracts Clauses.

j.  Enjoining the implementation of Joint Resolution 188 and prohibiting any defendant from transferring Pledged Property from the ERS to the Commonwealth.

k.  Imposing a constructive trust for the benefit of the ERS and plaintiffs on any Pledged Property received by the Commonwealth pursuant to Joint Resolution 188.

l.  Awarding plaintiffs damages for any loss suffered pursuant to Joint Resolution 188.

m.  Awarding attorneys' fees and costs incurred in prosecuting this action in favor of plaintiffs.

n.  Awarding any and all other relief as the Court deems just and proper in these circumstances.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today July 27, 2017.

By:

/s/ *Alfredo Fernández-Martínez*

Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*Counsel for Plaintiffs Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Management, LLC, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ *Bruce Bennett*

Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Christopher J. DiPompeo (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
cdipompeo@jonesday.com
ssooknanan@jonesday.com

*Counsel for Plaintiffs Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Management, LLC, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ *José C. Sánchez-Castro*

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@lsplawpr.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@lsplawpr.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@lsplawpr.com

LÓPEZ SÁNCHEZ & PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

*Counsel for Puerto Rico AAA Portfolio
Bond Fund, Inc., Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico
AAA Portfolio Target Maturity Fund, Inc.,
Puerto Rico Fixed Income Fund, Inc.,
Puerto Rico Fixed Income Fund II, Inc.,
Puerto Rico Fixed Income Fund III, Inc.,
Puerto Rico Fixed Income Fund IV, Inc.,
Puerto Rico Fixed Income Fund V, Inc.,
Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico
Investors Bond Fund I, Puerto Rico
Investors Tax-Free Fund, Inc., Puerto
Rico Investors Tax-Free Fund, Inc. II,
Puerto Rico Investors Tax-Free Fund III,
Inc., Puerto Rico Investors Tax-Free Fund
IV, Inc., Puerto Rico Investors Tax-Free
Fund V, Inc., Puerto Rico Investors Tax-
Free Fund VI, Inc., Puerto Rico
Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto
Rico Fund, Inc., Tax-Free Puerto Rico
Fund II, Inc., and Tax-Free Puerto Rico
Target Maturity Fund, Inc.*

/s/ *John K. Cunningham*

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Puerto Rico AAA Portfolio
Bond Fund, Inc., Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico
AAA Portfolio Target Maturity Fund, Inc.,
Puerto Rico Fixed Income Fund, Inc.,
Puerto Rico Fixed Income Fund II, Inc.,
Puerto Rico Fixed Income Fund III, Inc.,
Puerto Rico Fixed Income Fund IV, Inc.,
Puerto Rico Fixed Income Fund V, Inc.,
Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico
Investors Bond Fund I, Puerto Rico
Investors Tax-Free Fund, Inc., Puerto
Rico Investors Tax-Free Fund, Inc. II,
Puerto Rico Investors Tax-Free Fund III,
Inc., Puerto Rico Investors Tax-Free Fund
IV, Inc., Puerto Rico Investors Tax-Free
Fund V, Inc., Puerto Rico Investors Tax-
Free Fund VI, Inc., Puerto Rico
Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto
Rico Fund, Inc., Tax-Free Puerto Rico
Fund II, Inc., and Tax-Free Puerto Rico
Target Maturity Fund, Inc.*